**No. 1:16-cv-00001**
**Judge Lettow**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**ALPINE PCS, INC.,**

Plaintiff,

v.

**THE UNITED STATES,**

Defendant.

**DEFENDANT'S MOTION TO DISMISS**

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

STEVEN J. GILLINGHAM
Assistant Director

RENÉE GERBER
Trial Attorney
Commercial Litigation Branch
Department of Justice
P.O. Box 48
Ben Franklin Station
Washington, D.C. 20044
Tele:       (202) 307-234
Facsimile:  (202) 307-0972
Renee.A.Gerber@usdoj.gov

April 18, 2016                                Attorneys for Defendant

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

STATEMENT OF FACTS ......................................................................................................1

    I.     Alpine's Licenses..........................................................................................1

    II.    Administrative And Judicial Review Of FCC's Actions..........................................3

SUMMARY OF THE ARGUMENT ......................................................................................4

ARGUMENT.............................................................................................................................5

    I.     Standard Of Review....................................................................................5

    II.    Alpine's Contract Claims Are Not Timely ...............................................................6

        A.    Any Alleged Breach Of Contract Claim Accrued No Later Than January 2007 ......................................................................................6

        B.    Alpine's Administrative Appeal Of FCC's Determination Does Not Affect The Date Of Accrual Because That Appeal Was Permissive, Not Mandatory ......................................................................................8

    III.   Alpine's Takings Claim Is Not Timely......................................................................9

    IV.   This Court Lacks Jurisdiction To Entertain Alpine's Fraud In The Inducement Claim For The Additional Reason That The Claim Sounds In Tort ..............................................................................................................12

CONCLUSION........................................................................................................................12

# TABLE OF AUTHORITIES

**Cases and Administrative Decisions**

*Alder Terrace, Inc. v. United States*,
   161 F.3d 1372 (Fed. Cir. 1998) .................................................................................... 6

*Alliance of Descendants of Texas Land Grants v. United States*,
   37 F.3d 1478 (Fed. Cir. 1994) ...................................................................................... 9

*Alpine PCS, Inc. v. FCC*,
   404 F. App'x 508 (D.C. Cir. 2010) ........................................................................... 3, 7

*Alpine PCS, Inc. v. FCC*,
   563 F. App'x 788 (D.C. Cir. 2014) ............................................................................... 3

*Alpine PCS, Inc.*,
   25 FCC Rcd 469 (2010) ................................................................................................ 3

*Amendment of Part 1 of the Commisison's Rules – Competitive Bidding Procedures*,
   13 FCC Rcd 374 (1997) ............................................................................................. 10

*Black v. United States*,
   84 Fed. Cl. 439 (2008) ................................................................................................. 7

*Cedars-Sinai Medical Ctr. v. Watkins*,
   11 F.3d 1573 (Fed. Cir. 1993) ...................................................................................... 5

*Celtronix Telemetry, Inc. v. FCC*,
   272 F.3d 585 (D.C. Cir. 2001) ................................................................................... 10

*Dureiko v. United States*,
   42 Fed. Cl. 568 (1998), *affd in part, rev'd in part*, 209 F.3d 1345 (Fed. Cir. 2000) ................ 12

*Empire Institute of Tailoring, Inc. v. United States*,
   142 Ct. Cl. 165 (1958) .............................................................................................. 8, 9

*Hair v. United States*,
   52 Fed. Cl. 279 (2002) ............................................................................................... 10

*In re Alpine PCS, Inc.*,
   2008 WL 5076983 (Bankr. D.D.C. Oct. 10, 2008) ............................................... 2, 3, 7

*Japanese War Notes Claimants Ass'n v. United States*,
   373 F.2d 356 (Ct. Cl. 1967) .................................................................................................. 7

*John R. Sand & Gravel Co. v. U.S.*,
   552 U.S. 130 (2008) ............................................................................................................ 6

*Manufacturers Aircraft Ass'n v. United States*,
   77 Ct. Cl. 481 (1933).......................................................................................................... 6

*Martinez v. United States*,
   333 F.3d 1295 (Fed. Cir. 2003) (en banc)...................................................................... 7, 8

*Nw. LA Fish & Game Pres. Comm'n v. United States*,
   446 F.3d 1285 (Fed. Cir. 2006).......................................................................................... 9

*Papasan v. Allain*,
   478 U.S. 265 (1986) ............................................................................................................ 6

*Petro-Hunt, LLC v. United States*,
   90 Fed. Cl. 51 (2009) ....................................................................................................... 10

*Phang v. United States*,
   87 Fed. Cl. 321 (2009), *aff'd sub nom.* 388 F. App'x 961 (Fed. Cir. 2010) ............................. 12

*Soriano v. United States*,
   352 U.S. 270 (1957) .......................................................................................................... 10

*Terteling v. United States*,
   167 Ct. Cl. 331 (1964)........................................................................................................ 7

*United States v. Gen. Motors Corp.*,
   323 U.S. 373 (1945) ............................................................................................................ 9

*United States v. Kubrick*,
   444 U.S. 111 (1979) ............................................................................................................ 7

*Welcker v. United States,*
   752 F.2d 1577 (Fed. Cir.1985)........................................................................................... 7

*Westlands Water Dist. v. United States*,
   109 Fed. Cl. 177 (2013) ..................................................................................................... 5

**Statutes**

28 U.S.C. § 1492 .................................................................................................................. 11

28 U.S.C. § 2501 ............................................................................................................ 1, 4, 6

47 U.S.C. § 309 .................................................................................................................... 1

**Regulations**

47 C.F.R. § 1.2110 ...................................................................................................... 2, 7, 10

47 C.F.R. § 1.429 .................................................................................................................. 8

## UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |  |
|---|---|---|
| **ALPINE PCS, INC.,** | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 1:16-cv-00001 Judge Lettow |
| **THE UNITED STATES,** | ) ) ) ) | |
| Defendant. | ) ) | |

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims (RCFC), defendant, the United States, respectfully requests that this Court dismiss plaintiff Alpine PCS, Inc. (Alpine)'s complaint for lack of jurisdiction. Alpine's claims accrued no later than 2007, but Alpine did not file its complaint until January 4, 2016. The claims therefore fall outside this Court's six-year statute of limitations established by 28 U.S.C. § 2501.

## STATEMENT OF FACTS

### I. Alpine's Licenses

Congress has authorized the Federal Communications Commission (FCC or Commission) to award licenses for certain spectrum-based communication services via competitive bidding. *See* 47 U.S.C. § 309(j). Pursuant to this authority, the Commission has conducted auctions for licenses for spectrum to provide Personal Communications Service (PCS), a form of wireless telecommunications service.

During a PCS auction in 1996, Alpine submitted the winning bid for two licenses for spectrum to provide wireless telecommunications service in San Luis Obispo and Santa Barbara,

California. Compl. at ¶¶ 3-4.[1] Under the FCC's rules, Alpine was allowed to pay for each license by making quarterly installment payments to the Commission. *Id.* at ¶ 5. To memorialize this debt, Alpine issued promissory notes to the FCC for each license. *Id.* at ¶ 6. At the same time, to secure the debt, Alpine executed security agreements for each license. *Id.* at ¶ 8.

In 2002, Alpine failed to make its required installment payments for each license. Compl. at ¶¶ 22-24. Pursuant to then-applicable FCC regulations, Alpine received two three-month grace periods to satisfy its payment requirements. *Id.* at ¶ 21; *see* 47 C.F.R. § 1.2110(g)(4)(i) (providing first grace period); 47 C.F.R. § 1.2110(g)(4)(ii) (providing second grace period). Only two grace periods are permitted pursuant to 47 C.F.R. § 1.2110(g)(4). If the required installment payment is not made by the end of the second grace period, "it shall be in default, its license shall automatically cancel, and it will be subject to debt collection procedures." 47 C.F.R. § 1.2110(g)(4)(iv).

The second of Alpine's grace periods expired on July 31, 2002. *See In re Alpine PCS, Inc.*, No. 08-543, 2008 WL 5076983 at *1-2 (Bankr. D.D.C., Oct. 10, 2008). Alpine did not pay the required installment payments by that date. Instead, near the end of its second three-month grace period, Alpine filed a request to renegotiate its auction debt while retaining its licenses. Compl. at ¶ 28. One week later, on July 31, 2002—the day on which the second grace period expired—Alpine submitted a request for waiver of the extended deadline for making payment on the promissory notes. *Id.* at ¶ 30.

For a period of several months starting on August 30, 2002, FCC staff communicated with Alpine about these requests. Compl. at ¶¶ 32, 36. "In the first half of 2003," the

---

[1] For the purposes of this motion to dismiss only, we accept as true all factual allegations set forth in Alpine's complaint.

Commission "unilaterally cut off discussions with Alpine." *Id.* at ¶ 36. On January 16, 2004, the FCC notified Alpine that it was in default under the notes. *Id.* at ¶ 37. On January 27, 2007, the FCC's Wireless Telecommunications Bureau officially denied Alpine's July 31, 2002 request for waiver. *Id.* at ¶ 40.

## II. Administrative And Judicial Review Of FCC's Actions

Alpine pursued administrative review of the waiver denial. *Id.* In 2010, the full Commission denied Alpine's petition for reconsideration. *Id.* at ¶ 43; *see Alpine PCS, Inc.*, 25 FCC Rcd 469 (2010) (Reconsideration Order). Alpine appealed the Reconsideration Order to the United States Court of Appeals for the District of Columbia Circuit in 2010, which affirmed the FCC's decision. Compl. at ¶ 46; *see Alpine PCS, Inc. v. FCC*, 404 F. App'x 508 (D.C. Cir. 2010).

In 2008, while Alpine's petition for reconsideration was pending, the FCC announced that it would conduct a new auction to assign spectrum, including spectrum previously assigned (via the licenses) to Alpine. Compl. at ¶ 41. Alpine thereafter commenced a Chapter 11 bankruptcy case and requested the bankruptcy court to enjoin the auction. *Id.* at ¶ 42. The bankruptcy court denied the injunction. *See In re Alpine PCS, Inc.*, No. 08-543, 2008 WL 5076983. The Commission re-auctioned the licenses in 2008. Comp. at ¶ 42.

In 2012, Alpine brought an action for breach of contract in the United States District Court for the District of Columbia. Compl. at ¶ 47. The district court dismissed that suit, and the D.C. Circuit affirmed the district court's decision on appeal. *Id.* at ¶ 48; *see Alpine PCS, Inc. v. FCC*, 563 F. App'x 788 (D.C. Cir. 2014).

## SUMMARY OF THE ARGUMENT

Alpine's claims are untimely because they accrued no later than January 27, 2007, when the FCC denied Alpine's waiver request. By operation of the FCC's regulations, Alpine's licenses were cancelled automatically when Alpine did not pay its required installment by July 31, 2002, the day its second grace period expired. Even if Alpine could justifiably claim that it did not know that its licenses were cancelled and that it believed the FCC had not applied its regulations to Alpine's licenses, the FCC formally denied Alpine's waiver request in January 2007. At that time, the FCC informed Alpine of its continued determination that Alpine was in default for nonpayment, which meant Alpine's licenses were cancelled.

First, Alpine's contract claims are untimely. Alpine alleges that it entered an implied-in-fact contract or an oral contract (or possibly an oral implied-in-fact contract) with the FCC that its waiver request would be granted and that, in contravention of FCC regulation, Alpine could keep its licenses while its waiver request was pending. Even if Alpine possessed the contractual rights it alleges – which we accept only for the purposes of this motion to dismiss – Alpine knew no later than January 2007 that the FCC was denying the waiver request and considered Alpine in default of its payment requirements. Any alleged breach of contract claims, therefore, accrued no later than January 2007. Although Alpine pursued administrative and judicial review of the FCC's decision, that did not toll the statute of limitations set forth by 28 U.S.C. § 2501.

Second, Alpine's takings claim is similarly untimely. Alpine alleges that its licenses were taken without just compensation in contravention of the Fifth Amendment Takings Clause. Such claims necessarily accrued when the licenses were automatically cancelled on July 31, 2002 pursuant to the FCC's regulations. The alleged takings claim was not stayed pending administrative and judicial review. Although Alpine argues its claim was not ripe because the

4

FCC could have changed its decision during the various reviews, takings liability is not suspended by permissive, rather than mandatory, administrative appeals.

Nor does the accrual date change based upon alleged communications from FCC employees that caused Alpine to believe that the agency agreed that the licenses were not cancelled. Even if Alpine could reasonably assert that such alleged statements meant that its injury was either concealed by the FCC or unknowable in 2002, thus suspending the statute of limitations, the FCC informed Alpine of its position in 2004, 2007, and 2008. Alpine knew of its alleged takings claim, therefore, more than six years before it filed its complaint in this Court.

Last, Alpine's third claim, titled as "fraud in the inducement," lies outside this Court's jurisdiction for the additional reason that, to the extent it identifies an injury separate from the other articulated contract claims, it is a tort claim. Fraud in the inducement as a stand-alone claim necessarily encompasses allegations of fraud *prior* to contract formation, which is a claim sounding in tort, not a breach of contract.

Because the Court does not have subject matter jurisdiction over the claims alleged, it should dismiss Alpine's complaint.

## ARGUMENT

### I. Standard Of Review

Motions brought under Rule 12(b)(1) are properly granted if a pleading does not demonstrate that subject matter jurisdiction lies with the reviewing court. RCFC 12(b)(1). In considering a motion to dismiss, the factual allegations in the complaint must be "taken as true and construed in a light most favorable to the complainant." *Cedars-Sinai Medical Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993). The complaint's legal conclusions, however, need not be accepted as true. *See Westlands Water Dist. v. United States*, 109 Fed. Cl. 177, 190

(2013) ("Further, the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'") (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## II.     Alpine's Contract Claims Are Not Timely

Section 2501 of Title 28 of the United States Code provides: "Every claim of which the United State Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."  28 U.S.C. § 2501.  The statute of limitations is a jurisdictional bar to this Court's consideration of untimely claims. *John R. Sand & Gravel Co. v. U.S.*, 552 U.S. 130 (2008) (holding that this Court must consider as a threshold matter whether claims are timely, even if no party has raised the issue).

The first four counts of Alpine's complaint concern allegations that FCC staff made representations to Alpine in 2002 that "if Alpine submitted appropriate restructuring and waiver requests," Alpine could retain its licenses notwithstanding its failure to make timely installment payments.  Compl. at ¶ 24.  Alpine claims that when the FCC declared Alpine in default on its license payments and later denied its waiver request, the Commission breached written and oral contracts (Count One) and a "contract implied in fact" (Count Two), committed "fraud in the inducement" (Count Three),[2] and breached its "duty of good faith and fair dealing" (Count Four).  All of these claims accrued by 2007, when the Wireless Telecommunications Bureau denied Alpine's request for waiver.

### A.     Any Alleged Breach Of Contract Claim Accrued No Later Than January 2007

"Generally, in the case of a breach of a contract, a cause of action accrues when the breach occurs." *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing *Manufacturers Aircraft Ass'n v. United States*, 77 Ct. Cl. 481, 523 (1933)).  Nonetheless,

---

[2]     Count Three is properly characterized as a tort claim, as we explain in section IV below.  To the extent it describes a contract claim, however, this Court still lacks jurisdiction to entertain the claim because it is untimely.

6

"[a] claim does not accrue until the claimant has suffered damages," *Terteling v. United States*, 167 Ct. Cl. 331, 338 (1964), nor until the claimant knew or should have known of the breach. *Martinez v. United States*, 333 F.3d 1295, 1319 (Fed. Cir. 2003) (en banc).  Suspending a claim's accrual for a lack of knowledge, however, is narrowly applied, *id.*; a "[p]laintiff must either show that defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the accrual date." *Welcker v. United States,* 752 F.2d 1577, 1580 (Fed. Cir.1985) (quoting *Japanese War Notes Claimants Ass'n v. United States*, 373 F.2d 356, 359 (Ct. Cl. 1967)).  Ignorance of the law does not suspend a claim's accrual.  *See Black v. United States*, 84 Fed. Cl. 439, 448 (2008) (citing *United States v. Kubrick*, 444 U.S. 111, 122 (1979) and others).

Alpine alleges that it was damaged by the FCC's breach because it was unable to "seek protection in bankruptcy court" before the licenses cancelled.  Compl. at ¶ 56 (with respect to Count Two); *see also id.* at ¶ 52 (with respect to Count One); ¶ 60 (with respect to Count Three); ¶ 64 (with respect to Count Four).  The licenses automatically cancelled, per then-applicable FCC regulations, after the second grace period ended on July 31, 2002.  *Id.* at ¶ 31; 47 C.F.R. § 1.2110(g)(4)(iv); *see also See In re Alpine PCS, Inc.*, No. 08-543, 2008 WL 5076983 at *4 ("[T]he Licenses were automatically cancelled on August 1, 2002 . . . ."); *Alpine PCS*, 404 F. App'x at 508 ("[T]he licenses had been cancelled in 2002 . . . .").  The alleged breach of Alpine's express contract, therefore, accrued more than thirteen years before the complaint was filed.

As for any oral or implied-in-fact contracts that Alpine alleges were formed, Alpine knew or should have known of any contractual breach by 2007 at the latest.  Alpine's restructuring request was returned to Alpine on January 30, 2004.  *Id.* at ¶ 39.  Alpine's waiver request was denied on January 29, 2007.  *Id.* at ¶ 40.  Although the specific terms of Alpine's alleged

7

contracts were not included in the complaint, Alpine repeatedly states that the "denial of the Restructuring and Waiver Requests" violated the alleged agreement between the FCC and Alpine. *See id.* at ¶¶ 51-52 (Count One); ¶ 56 (Count Two); ¶ 61 (Count Three); ¶ 63 (Count Four). Alpine was aware of the FCC's denials that it alleges constituted contractual breaches, and those denials occurred more than six years before Alpine filed its complaint in this Court. Alpine's contractual claims are thus untimely.

> B.  Alpine's Administrative Appeal Of FCC's Determination Does Not Affect The Date Of Accrual Because That Appeal Was Permissive, Not Mandatory

Alpine suggests that its untimely claims "were not ripe" until the FCC issued its Reconsideration Order on January 5, 2010. Compl. at ¶ 46. The complaint misstates the relevant legal standard. The FCC's Reconsideration Order did not affect the deadline for asserting alleged contract claims to this Court.

It is long-established that a claim accrues without regard to any permissive (rather than mandatory) administrative remedy, and the statute of limitations does not toll if a plaintiff seeks such administrative review. *See, e.g.*, *Martinez*, 333 F.3d at 1304 (stating that, in Tucker Act suits, "a plaintiff's invocation of a permissive administrative remedy does not prevent the accrual of the plaintiff's cause of action, nor does it toll the statute of limitations pending the exhaustion of that administrative remedy"); *Empire Institute of Tailoring, Inc. v. United States*, 142 Ct. Cl. 165, 168 (1958) (same).

The FCC denied Alpine's waiver request in January 2007. Alpine was not required to petition for reconsideration of the FCC's denial before filing suit in this Court. 47 C.F.R. § 1.429(a) ("Any interested person *may* petition for reconsideration of a final action in a proceeding conducted under this subpart") (emphasis added). Moreover, under FCC regulations,

petitions for reconsideration do not stay the effectiveness of the decision for which reconsideration is sought. 47 C.F.R. § 1.429(k).[3]

Thus, notwithstanding Alpine's petition for reconsideration, its claims accrued when FCC staff denied Alpine's requests for restructuring and waiver. Moreover, Alpine was not required to petition for FCC reconsideration before it filed a complaint in this Court. Because its petition for administrative reconsideration "was not mandatory, but permissive only," *Empire Institute of Tailoring, Inc.*, 142 Ct. Cl. at 168, the statute of limitations was not tolled for Alpine's contract claims. Because the denial occurred more than six years before Alpine filed the instant complaint and nothing operated to toll the statute of limitations, Alpine's contract claims are not timely and must be dismissed.

### III. Alpine's Takings Claim Is Not Timely

Alpine's takings claim is similarly untimely. Alpine alleges that the licenses were "a valuable property interest of Alpine in 2002," Compl. at ¶ 67, and that this property interest was "invade[d]" by the FCC's "denial of the Restructuring and Waiver requests, combined with its modification of the CFR to provide for 'automatic cancellation' of the Licenses." *Id.* at 68.

A takings claim "accrues when th[e] taking action occurs." *Alliance of Descendants of Texas Land Grants v. United States*, 37 F.3d 1478, 1481 (Fed. Cir. 1994). A taking occurs when governmental action deprives the owner of all or most of its property interest. *Nw. LA Fish & Game Pres. Comm'n v. United States*, 446 F.3d 1285, 1289 (Fed. Cir. 2006) (citing *United States v. Gen. Motors Corp.*, 323 U.S. 373, 378 (1945)). "A permanent takings claim arises when: (i) all the events which fix the government's liability have occurred; and (ii) the plaintiff knew or

---

[3] Section 1.429(k) provides in pertinent part: "Without special order of the Commission, the filing of a petition for reconsideration shall not excuse any person from complying with any rule or operate in any manner to stay or postpone its enforcement. However, upon good cause shown, the Commission will stay the effective date of a rule pending a decision on a petition for reconsideration." 47 C.F.R. § 1.429(k).

9

should have known of the existence of these events." *Petro-Hunt, LLC v. United States*, 90 Fed. Cl. 51, 59 (2009).

The Government's liability is fixed when a Government action is considered final, even if a plaintiff can appeal that decision administratively. In other words, a takings claim accrues when the Government takes the property, regardless of whether the plaintiff may pursue an administrative appeal of that action. The Supreme Court has explained that, as with other claims under the Tucker Act, the statute of limitations for takings claims is not tolled for permissive administrative appeals. *Soriano v. United States*, 352 U.S. 270, 275 (1957) (tolling statute of limitations for takings claim pending administrative appeal "would be a limitless extension of the period of limitation that Congress expressly provided for the prosecution of claims against the Government in the Court of Claims. This we cannot do.").

Here, Alpine's takings claim accrued in 2002. After the expiration of the second three-month grace period that year, the licenses reverted to the FCC by operation of law. *See* 47 C.F.R. § 1.2110(g)(4)(iv); *see also* Compl. at ¶ 67 (describing the licenses as a "valuable property interest of Alpine in 2002"). The Commission adopted a rule in 1997 that provided for automatic cancellation of licenses in the event any licensee failed to make payment before the expiration of the second grace period. *See Amendment of Part 1 of the Commisison's Rules – Competitive Bidding Procedures*, 13 FCC Rcd 374 (1997); *Celtronix Telemetry, Inc. v. FCC*, 272 F.3d 585, 586 (D.C. Cir. 2001). Under the terms of that rule, any alleged taking of Alpine's licenses or their value occurred in 2002, when Alpine failed to make payment before its second grace period expired.

Alpine alleges that the regulation contravened its promissory notes' terms, Compl. ¶ 21, implying that therefore a taking could not have occurred until later. That is incorrect. Whether

10

the regulation properly applied to Alpine's licenses is relevant—if at all—only to the merits of Alpine's claim that the Government effected a taking of a cognizable property interest. It does not change the date on which the alleged taking occurred.

Alpine also alleges that the FCC acted to make Alpine believe that the licenses were not cancelled. Compl. ¶¶ 34-35. The statute of limitations may be tolled for takings claims only if a claimant "allege[s] that the defendant has concealed its acts with the result that plaintiff was unaware of their existence or it…show[s] that its injury was inherently unknowable at the accrual date." *Hair v. United States*, 52 Fed. Cl. 279, 282 (2002) (internal quotation marks removed).

Alpine has not alleged concealment on the part of the FCC, although Alpine does allege that an FCC staff member incorrectly told Alpine in 2002 that the public database showing that the licenses had been cancelled "was the result of a clerical error." *Id.* at ¶ 34. Even if that alleged statement were "concealment," however, subsequent events demonstrate that Alpine knew or should have known of its alleged injury by 2004 and no later than 2008. In 2004, the Commission stated unequivocally that it considered Alpine in default. Compl. at ¶ 37. In 2007, in an order denying Alpine's waiver request, the Wireless Telecommunications Bureau reiterated that the FCC considered Alpine in default, which would mean that the licenses were cancelled. *Id.* at ¶ 40. If there was any remaining doubt that the FCC considered Alpine's licenses terminated, the FCC removed it in 2008 when, "[o]ver Alpine's objection," the Commission re-auctioned the spectrum to which the licenses applied. *Id.* at ¶ 42. Each of these incidents predated the six-year limitations period, and the nature of Alpine's alleged injury (*i.e.*, the cancellation of the licenses) has been apparent since 2002. Therefore, Alpine's alleged taking claim could be tolled, if at all, only until 2004 or 2008 at the latest. Because 2008 is still more

than six years before Alpine filed its complaint, the Court must dismiss Alpine's takings claim as untimely.

### IV. This Court Lacks Jurisdiction To Entertain Alpine's Fraud In The Inducement Claim For The Additional Reason That The Claim Sounds In Tort

Alpine's third claim—"fraud in the inducement"—lies outside the statute of limitations for the reasons described above. This Court lacks jurisdiction to entertain that claim for the additional reason that a fraud in the inducement claim sounds in tort. This Court lacks jurisdiction to entertain claims sounding in tort. 28 U.S.C. § 1491(a)(1). Although this Court may entertain certain tortious claims stemming from a breach of contract, fraud in the inducement alleges fraud *before* a contract is formed, not stemming from a tortious violation of an existing contract, and thus falls outside this Court's jurisdiction. *Phang v. United States*, 87 Fed. Cl. 321, 326 (2009), *aff'd sub nom. Phu Mang Phang v. United States*, 388 F. App'x 961 (Fed. Cir. 2010) (finding no jurisdiction for fraud in the inducement claim because "[t]he government's duty not to commit fraud arises separately from (and prior to) its plea bargain contract with the plaintiff"); *see also Dureiko v. United States*, 42 Fed. Cl. 568, 581 (1998), *aff'd in part, rev'd in part*, 209 F.3d 1345 (Fed. Cir. 2000)). This Court therefore should dismiss Alpine's third claim for the additional reason that it sounds in tort.

### CONCLUSION

For these reasons, the Court should dismiss the claims against the United States for lack of subject matter jurisdiction.

        Respectfully submitted,

        BENJAMIN C. MIZER
        Principal Deputy Assistant Attorney General

        ROBERT E. KIRSCHMAN, JR.
        Director

       <u>/s/ Steven J. Gillingham</u>
        STEVEN J. GILLINGHAM
        Assistant Director


       <u>/s/ Renée Gerber</u>
        RENÉE GERBER
        Trial Attorney
        Commercial Litigation Branch
        Department of Justice
        P.O. Box 480
        Ben Franklin Station
        Washington, D.C.  20044
        Tele:  (202) 307-0234
        Facsimile:  (202) 307-0972
        Renee.A.Gerber@usdoj.gov

April 18, 2016        Attorneys for Defendant