# In the United States Court of Federal Claims

No.  16-1C

(Filed:  September 14, 2016)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| ALPINE PCS, INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| UNITED STATES, | ) ) ) |
| Defendant. | ) ) ) |

Claimed breach of agreements with the FCC related to spectrum licenses purchased at auction by plaintiff; displacement of jurisdiction founded on the Tucker Act by the remedial scheme provided by federal communication laws; application of *United States v. Bormes*; takings claim precluded by the pertinent statute of limitations, 28 U.S.C. § 2501

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Norman A. Pattis, New Haven, CT, for plaintiff.

Peter A. Gwynne, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.  With him on the briefs were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, and Robert E. Kirschman, Director, and Steven J. Gillingham, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

**OPINION AND ORDER**

LETTOW, Judge.

Plaintiff Alpine PCS seeks damages against the United States for breach of contract, breach of the duty of good faith and fair dealing, fraud in the inducement, and taking of property without just compensation.  Plaintiff's claims stem from cancellation by the Federal Communications Commission ("FCC" or "Commission") of two Personal Communications Service ("PCS") spectrum licenses purchased by Alpine in an auction held in 1996.  Compl. ¶ 1.[1] Alpine held these licenses attendant to promissory notes and security agreements that permitted it to pay the FCC in installments.  Alpine defaulted on its obligations to pay in 2002, and the FCC denied its requests for debt restructuring and waiver of payment in 2007.  The licenses were resold in 2008.

---

[1] "Personal Communications Service" denotes a form of wireless telecommunications service.

Alpine filed this suit on January 4, 2016.  Pending before the court is the government's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"), ECF No. 8.  A hearing was held on August 22, 2016.

# BACKGROUND

## A. Alpine's Purchase of Spectrum Licenses and Its Default

Alpine PCS was in the business of providing wireless telecommunications services. Compl. ¶ 3.  In May 1996, Alpine was the winning bidder in an FCC auction for two ten-year wireless spectrum licenses in the San Luis Obispo and Santa Barbara, California markets.  *See In re Alpine PCS*, 22 FCC Rcd. 1492, 1494-95, 2007 WL 256166 (2007); Compl. ¶ 4.

In September 1996, Alpine and the FCC entered into an installment payment plan for Alpine to pay its winning bid amounts for the licenses in quarterly installments.  Compl. ¶¶ 5-6. Contractually, the payment plan was memorialized in two installment payment plan notes and security agreements, under which the FCC was a secured creditor.  Compl. ¶¶ 6, 8.  Under the promissory notes, Alpine would be deemed in default of its obligations if it was delinquent in its payments to the FCC for more than 90 days and either failed to apply for a grace period or applied for such grace period and failed to resume payments after its expiration.  Compl. App. 1 (Installment Payment Plan Note), at 2-3.  A grace period would only be available if "provided for in the then-applicable orders and regulations of the Commission."  *Id.*

In January 2002, Alpine failed to make the requisite installment payments owed to the FCC on its licenses.  Compl. ¶¶ 22-23; *see In re Alpine PCS*, No. 08-00543, 2008 WL 5076983, at *2 (Bankr. D.D.C., Oct. 10, 2008), *aff'd*, 404 Fed. Appx. 504 (D.C. Cir. 2010).  At that time, relevant FCC regulations provided for two automatic 90-day grace periods for licensees on installment payment plans.  *See* 47 C.F.R. § 1.2110(g)(4)(i)-(ii).  If a licensee failed to make payment within the two grace periods, it would be deemed in default and subject to debt collection.  47 C.F.R. § 1.2110(g)(4)(iv).  The relevant licenses would also be "automatically cancel[led]."  *Id.*

The grace periods on Alpine's notes expired on July 31, 2002.  *In re Alpine PCS*, 2008 WL 5076983, at *2.  A week before the expiration, on July 24, 2002, Alpine submitted a Request for Debt Restructuring to the FCC.  Compl. ¶ 28.  On July 31, 2002, Alpine coupled this request with a further request to the FCC for waiver of the deferred installment payment due on that date. Compl. ¶ 30.  Alpine made no payments before the expiration of the grace period, and the licenses were automatically cancelled on August 1, 2002.  *In re Alpine PCS*, 2008 WL 5076983, at *2.  On January 16, 2004, the FCC notified Alpine that it was in default of its obligations under the notes and security agreements.  Compl. ¶ 37.

## B. Prior Administrative and Judicial Proceedings

On January 29, 2007, the Chief of the FCC's Wireless Telecommunications Bureau denied Alpine's requests for debt restructuring and waiver.  *In re Alpine PCS*, 22 FCC Rcd. 1492, 2007 WL 256166 (2007); Compl. ¶ 40.  Alpine sought administrative review by the FCC of that decision pursuant to 47 C.F.R. § 1.115.  Compl. ¶ 40.

In April 2008, the FCC announced a new auction for the spectrum licenses previously held by Alpine.  Compl. ¶ 41.  Alpine filed requests with the FCC and the Bankruptcy Court for the District of Columbia to stay the auction pending review of the 2007 decision, but both were denied.  *In re Alpine PCS*, 23 FCC Rcd. 10485, 2008 WL 2668760 (2008); *In re Alpine PCS*, 2008 WL 5076983.  The FCC ultimately resold the licenses for a combined total of $5,548,000.  Compl. ¶ 42.

On January 5, 2010, the FCC denied Alpine's request for reversal of the 2007 staff-level decision.  *In re Alpine PCS*, 25 FCC Rcd. 469, 2010 WL 25778 (2010); Compl. ¶ 43.  Alpine appealed this order to the United States Court of Appeals for the District of Columbia Circuit, which affirmed the FCC's decision.  *Alpine PCS, Inc. v. FCC*, 404 Fed. Appx. 508 (D.C. Cir. 2010).  Thereafter, in 2012, Alpine filed a breach of contract claim against the FCC in the United States District Court for the District of Columbia pursuant to a forum selection clause in the original notes and security agreements.  Compl. ¶ 47; *see* Compl. App. 1 (Installment Payment Plan Note), at 5.[2]  The district court dismissed this suit for lack of jurisdiction, holding that the forum selection clause was invalid because it contravened statutory provisions regulating the jurisdiction of federal courts and that the FCC's administrative scheme gave exclusive jurisdiction for judicial review of spectrum licensing decisions to the D.C. Circuit (as originally pursued by Alpine in 2010).  Tr. of Mot. Hr'g, *Alpine PCS v. FCC*, No. 13-06 (D.D.C. June 3, 2013), ECF No. 18.  The Court of Appeals affirmed.  *Alpine PCS, Inc. v. FCC*, 563 Fed. Appx. 788 (D.C. Cir. 2014); Compl. ¶ 48.

## STANDARDS FOR DECISION

Defendant's motion to dismiss Alpine's complaint constitutes a factual attack on this court's jurisdiction under RCFC 12(b)(1).  "[W]hen a court reviews a complaint under a factual attack, the allegations have no presumptive truthfulness, and the court . . . has discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts."  2 James Wm. Moore, *Moore's Federal Practice* § 12.30[4], at 12-45 (3d ed. 2012); *see Land v. Dollar*, 330 U.S. 731, 735 & n.4 (1994); *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991); *Rollock Co. v. United States*, 115 Fed. Cl. 317, 324 (2014); *see also Odyssey*

---

[2] The forum selection clause provided:

> Any legal action or proceeding relating to this Note, the Security Agreement, or other documents evidencing or securing the debt transaction evidenced hereby may only be brought in the United States District Court for the District of Columbia, and, by execution and delivery of this Note and Security Agreement, the maker hereby accepts for itself and in respect of its property generally and unconditionally, the jurisdiction of the aforesaid court.  The parties hereto hereby irrevocably waive any objection, including, without limitation, any objection to the laying of venue or based on the grounds of *forum non conveniens*, which any of them may now or hereafter have to the bringing of any such action or proceeding in the District of Columbia.

Compl. App. 1 (Installment Payment Plan Note), at 5 (capitals omitted).

*Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1169-70 (11th Cir. 2011); *Montez v. Department of the Navy*, 392 F.3d 147, 149 (5th Cir. 2004).  Unchallenged jurisdictional facts in the complaint are construed in favor of the plaintiff, while contested jurisdictional facts must be proven by a preponderance of the evidence.  *Rollock*, 115 Fed. Cl. at 324.

## ANALYSIS

> A.  *This Court Lacks Jurisdiction over Alpine's Claims for Breach of Contract and Breach of Duty of Good Faith and Fair Dealing Because the Federal Communications Laws and Associated Regulations Provide a Specific Remedial Scheme for Such Claims*

The Tucker Act, 28 U.S.C. § 1491(a), grants this court jurisdiction over disputes arising under contracts with the federal government.  In pertinent part, the Tucker Act provides that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1).  The government acknowledges that the Tucker Act is pertinent, but it contests jurisdiction of the court on the ground that Alpine's breach of contract claims are barred by the statute of limitations.

"Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501.  This time limit is strictly construed and is jurisdictional.  *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133-34 (2008).  The government argues that Alpine's breach of contract claims accrued in 2007, when the Chief of the Wireless Telecommunications Bureau denied Alpine's requests for waiver and debt restructuring.  Nonetheless, before seeking a judicial remedy regarding decisions made pursuant to delegated authority (such as the authority delegated to the Chief of the Wireless Telecommunications Bureau to adjudicate Alpine's claims), parties are required to file an application for review by the full Commission. 47 C.F.R. § 1.115(k).  The full commission did not deny Alpine's application for review until January 5, 2010.  *In re Alpine PCS*, 25 FCC Rcd. 469, 2010 WL 25778 (2010).  The Tucker Act requires exhaustion of mandatory administrative remedies before bringing suit in this court.  *Martinez v. United States*, 333 F.3d 1295, 1304 (Fed. Cir. 2003) (en banc); *Rollock*, 115 Fed. Cl. at 330-31.  Because the request for review of the staff-level decision was mandatory, Alpine's breach of contract claims did not accrue until January 5, 2010.  Alpine filed this case on January 4, 2016, one day within the six-year statute of limitations.  The breach of contract and breach of duty claims are thus timely filed and not jurisdictionally barred on the basis of the statute of limitations.

Even so, a different, critical jurisdictional hurdle arises respecting Alpine's suit.  "[T]he Tucker Act is displaced . . . when a law assertedly imposing monetary liability on the United States contains its own judicial remedies." *United States v. Bormes*, __ U.S. __, __, 133 S. Ct. 12, 18 (2012).  In essence, the general avenue for relief provided by the Tucker Act is not available when the applicable regulatory scheme provides a specific remedial framework.  *Id.* at 18-19; *see also Folden v. United States*, 379 F.3d 1344, 1357 ("When . . . a specific and comprehensive scheme for administrative and judicial review is provided by Congress, the Court of Federal Claims' Tucker Act jurisdiction over the subject matter covered by the scheme is

preempted.") (citing *Vereda, Ltda v. United States*, 271 F.3d 1367, 1375 (Fed. Cir. 2001)); *Tulsa Airports Improvements Trust v. United States*, 120 Fed. Cl. 254, 259 (2015) (applying *Bormes* in ruling that jurisdiction under the Tucker Act was displaced for a claim for reimbursement of payments for noise abatement work under grants from the Federal Aviation Administration, by statutory provisions calling for review in federal courts of appeals).

The federal communications laws, along with associated regulations issued by the FCC, provide a remedial scheme for administrative and judicial review of agency decisions related to waiver of installment payments and cancellation of spectrum licenses.  First, a party seeking waiver of the Commission's rules regarding spectrum licenses (here, automatic cancellation due to nonpayment of a license installment plan) must petition the Chief of the Telecommunications Bureau of the FCC.  47 C.F.R. § 1.925.  An adverse decision must be appealed to the full Commission before the party seeks judicial review.  47 C.F.R. § 1.115.  If the full Commission affirms the staff-level decision on appeal, only then can the party seek judicial review.  47 U.S.C. § 402(b); *see Alpine PCS*, 563 Fed. Appx. at 789.

In the case of a cancellation of a spectrum license for nonpayment, the FCC's decisions are exclusively appealable to the United States Court of Appeals for the District of Columbia Circuit.  47 U.S.C. § 402(b)(5) provides that appeals of FCC decisions may be taken to the D.C. Circuit "[b]y the holder of any . . . station license which has been modified or revoked by the Commission."  The D.C. Circuit's jurisdiction over claims that fall within this subsection is exclusive.  *Folden*, 379 F.3d at 1356; *see also Alpine PCS*, 563 Fed. Appx. at 789.

Alpine's claims fall within the purview of 47 U.S.C. § 402(b)(5).  PCS spectrum licenses, such as those held by Alpine, have been deemed to be "station licenses" within the context of the communications laws.  *Folden*, 379 F.3d at 1353; *NextWave Personal Commc'ns, Inc. v. FCC*, 254 F.3d 130, 140 (D.C. Cir. 2001).  Furthermore, the FCC's cancellation and reselling of Alpine's licenses constitute revocation under § 402(b)(5).  *See NextWave*, 254 F.3d at 140 ("Even if the Commission did not formally 'revoke' NextWave's licenses, that is certainly the effect of the license cancellation: the licenses once assigned to NextWave are now being re-auctioned to other bidders.").  Alpine's claims thus fall within the comprehensive administrative and judicial remedial scheme set forth by the FCC to resolve disputes over the cancellation of spectrum licenses.  Alpine fully exercised its rights under this scheme by appealing the staff-level decision to the full Commission and subsequently seeking judicial review in the D.C. Circuit.  In these circumstances, the preemption doctrine of *Bormes* and *Folden* applies, and the availability of the remedial scheme provided by the communications laws displaces this court's jurisdiction over Alpine's contractual claims under the Tucker Act.

   B.  *Alpine's Takings Claim is Barred by the Statute of Limitations in 28 U.S.C. § 2501*

As a preliminary matter, this court will treat Alpine's PCS spectrum licenses as property that could be subject to a taking.  The FCC issues PCS spectrum licenses pursuant to 47 U.S.C. § 301, which provides for the licensing and use of radio frequencies and other spectra.[3]  The statute

_____

   [3]The FCC has construed the "channels for radio transmission" described in 47 U.S.C. § 301 to include PCS spectra.  *See, e.g., In re Reauction of Defaulted PCS C Block Licenses*, 12

further states that "no such license shall be construed to create any right, beyond the terms, conditions, and periods of the license." *Id.* In its administrative decisions regarding PCS spectrum licenses, the FCC has relied on *FCC v. Sanders Bros. Radio Station*, 309 U.S. 470, 475 (1940), for the proposition that "no person is to have anything in the nature of a property right as a result of the granting of a license [under 47 U.S.C. § 301]."[4]

Even so, "[t]he Communications Act itself seems to . . . impl[y] the creation of rights akin to those created by a property interest limited only by the 'terms, conditions and periods of the license.'" *In re Atlantic Bus. and Cmty. Dev. Corp.*, 994 F.2d 1069, 1074 (3d Cir. 1993). Here, Alpine's licenses conferred a right to use particular wireless spectrums for a period of ten years, subject to the terms and conditions of the licenses. These terms included the requirement of timely installment payments and the cancellation of the licenses for nonpayment. In addressing Alpine's resort to the Bankruptcy Court for relief in bankruptcy proceedings in 2008, that court treated Alpine's licenses as a limited property right. *See In re Alpine PCS*, 2008 WL 5076983 at *5-6 (explaining that the cancellation of Alpine's licenses constituted the "lawful extinction of a property right"). This court concurs with the Bankruptcy Court's treatment of Alpine's licenses as a property interest, and will assess its takings claim in accord with that premise.

A takings claim will accrue for statute of limitations purposes when "governmental action deprives the owner of all or most of its property interest." *Northwest La. Fish & Game Pres. Comm'n v. United States*, 446 F.3d 1285, 1289 (Fed. Cir. 2006). Alpine was deprived of any right to use its purchased spectrum upon automatic cancellation of its licenses in 2002, thus extinguishing its property interest. The takings claim therefore accrued as early as 2002.

Alpine asserts that it had no knowledge of the cancellation in 2002 because it "relied on [the] FCC's representation at that point in time that the Licenses had not been cancelled or reverted to [the] FCC." Compl. ¶ 35. Accrual of a claim against the United States is suspended under the applicable statute of limitations, 28 U.S.C. § 2501, until the claimant knew or should have known that the claim existed. *Martinez*, 333 F.3d at 1319. A claim will not accrue if the plaintiff can show either that "defendant has concealed its acts [that led to plaintiff's claim] with the result that plaintiff was unaware of their existence or . . . that its injury was 'inherently unknowable' at the accrual date." *Welcker v. United States*, 752 F.2d 1577, 1580 (Fed. Cir. 1985). Even if Alpine did not know of its takings claim in 2002 because of alleged misrepresentations by the FCC and because of its continued use of the spectrum thereafter, Hr'g Tr. 16:7-22 (Aug. 22, 2016), it definitely had knowledge of its claim when the FCC re-auctioned Alpine's licenses in 2008 when it actively sought a stay of the auction. Thus, Alpine's takings claim accrued no later than when the licenses were resold in 2008. As the claim was filed in this

---

FCC Rcd. 17688, 17691, 1997 WL 667887 (1997) (applying the terms of 47 U.S.C. § 301 to auctions for PCS spectrum licenses).

[4] *See, e.g., In re Promoting Expanded Opportunities for Radio Experimentation & Mkt. Trials*, 28 F.C.C. Rcd. 758, 781 n.116, 2013 WL 393212 at *22 n.116 (2013); *In re Amendment of Part 27 of the Commission's Rules to Govern the Operation of Wireless Commc'ns Servs. in the 2.3 Ghz Band*, 25 F.C.C. Rcd. 11710, 11775-76, 2010 WL 2020824 at *53 (2010); *Reauction of Defaulted PCS C Block Licenses*, 12 FCC Rcd. at 17691.

court on January 4, 2016, it falls outside the six-year statute of limitations specified in Section 2501 and must be dismissed for lack of jurisdiction.

### C.  Alpine's Fraud in the Inducement Claim is a Tort Claim Outside the Jurisdiction of the Tucker Act

The Tucker Act specifically excludes tort cases from the jurisdiction of the Court of Federal Claims.  28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States . . . for liquidated or unliquidated damages in cases not sounding in tort.").  Apart from its breach of contract and takings claims, Alpine alleges that the FCC fraudulently induced the company to forfeit remedies that would have allowed it to avoid cancellation of its spectrum licenses.  Compl. ¶ 60.  Fraud in the inducement claims which do not arise from the violation of an existing contract are outside this court's jurisdiction.  *Phang v. United States*, 87 Fed. Cl. 321, 326 (2009), *aff'd sub nom. Phu Mang Phang v. United States*, 388 Fed. Appx. 961 (Fed. Cir. 2010).  The government's alleged fraud stems not from its alleged breach of the notes and security agreements, but rather concerns the government's representations to Alpine regarding the restructuring and waiver requests.  This separate tort claim therefore falls outside of the jurisdiction of this court.

## CONCLUSION

For the reasons stated above, the government's motion to dismiss plaintiff's complaint pursuant to RCFC 12(b)(1) is GRANTED.  The clerk will enter judgment in accord with this disposition.

No costs.

**IT IS SO ORDERED.**

s/ Charles F. Lettow
Charles F. Lettow
Judge